No. ——
First Circuit Appeal

MRS. JOSEPHINE E. BRUGIER v. TODD BROS. AUTO COMPANY

(June 12, 1925, Opinion and Decree)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Appeal—Par. 625, 626.** The finding of the trial judge as to the credibility of the witnesses on matters of fact, in this case the negligence of the employee of the defendant and lack of contributory negligence of the plaintiff, being clearly correct, is affirmed.

2. **Louisiana Digest—Evidence—Par. 343.**

A discrepancy in the amount of damages demanded by the plaintiff some time prior to the filing of suit and the amount demanded in the petition will not affect the credibility of the plaintiff litigant as a witness.

3. **Louisiana Digest—Damages—Par. 104, 106.**

One hundred dollars for nervous shock which was not severe and $200 for damages to automobile and otherwise is considered sufficient quantum of damages.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Judicial District Court, Parish of St. Tammany, Hon. Prentiss B. Carter, Judge.

This is a suit for damages for personal injuries and property damages to automobile arising out of collision between a bus and an automobile.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Miller & Miller, of Bogalusa, attorneys for plaintiff, appellee.

Harvey Ellis, of Covington, attorney for defendant, appellant.

MOUTON, J.    Plaintiff sues defendant company for damages alleged to have been caused by a bus belonging to defendant running into the rear end of a Buick auto which she was, on December 18, 1923, driving from Covington to Mandeville. The proof shows that the bus was going at the same time in the same direction plaintiff was traveling, and that it collided with the auto either on the rear end or side. Claud Todd was driving the bus for defendant company.

The collision occurred near the bridge on Ponchatoula creek. Plaintiff says that on approaching the bridge she saw a Ford car, with the top thrown back and sticking out on the side, coming in her direction, and that to avoid this piece which was sticking out of the Ford from scratching her auto, she slowed down the speed at which she was moving to ten or twelve miles an hour so as to let the "Ford get off the bridge before she got on". She says she was on the right-hand side of the road, and that all of a sudden something struck her car, that in a few minutes she saw the bus of defendant go by, and she then realized that her auto had been hit by the bus. She says the negro who was coming in the Ford from across the bridge had passed her by that time; that he came up to where she was and asked if she needed any help, and that Claud Todd, the driver of the bus, also came up; that upon asking the negro where he lived, and what was his name, which she did not catch, he answered he was afraid of courts; that Todd then said: "Beat it, negro," and made him leave. She says she then said to Todd: "Look at the damages you have done," and that he said: "It was better for me to have struck you on the side, otherwise you would not be here to tell about it, and that, anyway, women have no business to drive automobiles". She says Todd said: "Why did you stop"; that she answered: "I did not stop but had to slow down to avoid the danger" she saw ahead of her, that Todd walked towards his bus which was on the other side of the bridge, and left her in the road, unassisted. Todd denies he told the negro to leave or that he said women had no business driving cars, as was testified to by Mrs. Brugier. The fact is that he impliedly denies all the statements made by plaintiff as to what he had told her on that occasion, as above stated. He also gives quite a different version from that of the plaintiff as to how the collision actually occurred. His testimony is that on his way from Covington plaintiff passed ahead of the bus at Ponchatoula orange orchard; that he allowed her to pass ahead as he knew he could not keep up with a Buick car, and that after she had passed the bus she slackened her speed to about fifteen miles an hour. He explains such a speed as that

would not allow him to keep up with the schedule required of him to make connection with the trains, and that he blew his horn to have her clear the way. He says she knew he was coming behind her, and that she was keeping the highway blocked. Mrs. Brugier admits she passed the bus at the garage in Covington but denies she went ahead of it at the orange orchard. She denies positively and absolutely that she blocked the road, and says that she always kept her car on the right side of the road. She says she had at different times heard the horn of the bus, which is a loud one, and that if he had tried to signal her there was no reason why she should not have heard it. It is possible that Mrs. Brugier deliberately blocked the highway to prevent the bus from proceeding at its usual speed, but it seems to us that this is quite improbable, as we cannot see what motive could have prompted her to have behaved in a manner so unreasonable and unjustifiable.

Todd says plaintiff suddenly stopped her car without giving any warning whatever by a movement of the hand or otherwise. This sudden stop, he explained, was not and could not be expected; that his bus was then at about 75 feet from plaintiff's auto; that he could not stop the bus in less than 100 feet, and consequently did all in his power to avoid the collision, but without avail, and that the step protruding from the side of the bus in the rear struck the hind part or side of the auto. He says her car was then "kinder across the road on the left-hand side". In giving a recital of the occurrence, he said plaintiff had no reason to stop and that there was nothing sticking out over the Ford that could touch her auto.

It seems to us a little singular that plaintiff should have concocted a story to the effect that the top of the Ford was protruding from its side, and to avoid a contact therewith she had slowed down the speed of her car. It was not necessary for her to have fabricated such a story, as she could have simply said she had slackened her speed as she approached the bridge to allow the Ford to get over it before she undertook to cross the creek. If the negro who was driving the Ford had appeared as a witness this question would have been in all probability and without trouble solved one way or the other. No doubt, if he had not vanished from the scene immediately upon the appearance of Claud Todd, he would have been summoned by plaintiff, who, it is shown, had made inquiries as to his name and his place of domicile, and the truth of the matter would have been revealed without the necessity of having to eke it out the best we can from the conflicting testimony of plaintiff and the driver of the bus. Todd says when plaintiff passed the negroes in the Ford she was hugging the curve and was on the left side of the road. In speaking of these negroes he says: "They were down in the ditch, she was hugging the curve, and they were mighty near in the ditch; that they were actually down mighty near on the edge of the embankment". Todd was so persistent in showing how plaintiff was attempting to sqeeze the negroes from the left side of the road that counsel for defendant company, thinking that perhaps Todd had overstepped himself, asked him the following questions:

"Q. She was not close up on the left-hand side?
"A. She was close enough to have the gravel but not off on the bank.
"Q. She was not plumb over?
"A. No, sir."

Todd therefore admitted that she was not quite off the bank, and not completely over the east side of the road.

Todd first endeavored to show that plaintiff had actually barred the highway with

her auto to prevent him from running his bus at its customary speed, and that when she reached the bridge she had the rashness to cross the center of the roadway and to thus press the Ford car on the east side almost over the embankment of the highway. The proof shows that plaintiff had been driving automobiles for some time prior to this accident, and such driving as she is charged with by Todd, could not have been the result of inexperience on her part. It can not be believed that she would have thus acted through a spirit of mere mischief or recklessness, as there is nothing in the record to support such an inference. We have not been favored with any written reasons for the judgment rendered against defendant, but it is fair to presume that the court did not believe the statement given by Todd, and accepted the version of the occurrence as testified to by plaintiff.

In defendant's brief, counsel says: "It the court believes the testimony of Mrs. Brugier and not that of Todd, then the case would be with plaintiff. This is a correct conclusion, as the solution of the case depends upon the credibility of the witnesses. Doubtless, the District Judge believed Mrs. Brugier, and concluded that she had given a true recital of the occurrence, which shows that she had slowed down the speed of her car before she reached the bridge; that she was on the right side of the road and had left ample room on the left to allow the bus to pass in perfect safety.

It appears that some time prior to the filing of her suit plaintiff made a demand for damages against defendant. Payment was refused. Subsequently she instituted the present suit in which she increased the amount she had originally claimed. Because of this discrepancy between the amounts so demanded, counsel for defendant argues that plaintiff should not be believed as a witness. We do not think that such a variance in the amount claimed under the circumstances stated should be taken as affecting the credibility of a litigant. It is also pointed out by defendant's counsel that plaintiff was contradicted in reference to her testimony as to her going and coming from New Orleans in her car and as to the time it was kept in the garage in Slidell. Because of such contradiction counsel contends that plaintiff's recital of the accident should not be accepted as true. Obviously, the District Court did not take such a view of her testimony, and to which he gave credence in preference to the evidence of the driver of the bus, and held defendant liable in damages. We find no reason why we should not believe that Mrs. Brugier told the truth and gave a correct narrative of the accident. It is certainly impossible for us to say that the trial judge has fallen into a manifest error in believing Mrs. Brugier. We would have to reach this conclusion in order to authorize us to reverse the judgment as such is the rule that the Appellate Court must observe, when the solution of the cause depends on the credibility of the witnesses.

The proof shows that the repairs to plaintiff's auto amounted to $78.15, with the exception of a fender which was returned; that the door of the auto was sprung, thrown out of line, and that, though repaired as well as could be, the auto could not be restored to its original condition. There can be no doubt that plaintiff suffered a nervous shock as the result of this collision, and was also deprived of the use of her auto for several days.

The lower court allowed her damages in the sum of $530.00.

Her nervous shock was not severe, for which $100.00 is sufficient compensation,

and $200.00 for the other damages, we find, to be a fair allowance.

It is therefore ordered and decreed that the judgment be amended by reducing it to the sum of three hundred ($300.00) dollars; and as thus amended it be affirmed, appellee to pay the cost of appeal, those of the lower court to be paid by defendant.